Willard J. PATTERSON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 436, 1995.

Supreme Court of Delaware.

Submitted: Sept. 20, 1996.
Decided: Nov. 19, 1996.

Carl Schnee (argued), Gary F. Traynor and Patricia A. Pyles, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for Appellant.

Sam Glasscock, III (argued), and John Williams, Deputy Attorneys General, Dover, for Appellee.

Before VEASEY, C.J., WALSH, HOLLAND, BERGER, JJ., and BALICK *, Vice Chancellor, constituting the Court en Banc.

WALSH, Justice:

The appellant, Willard J. Patterson ("Patterson") appeals from a decision of the Superior Court which denied his motion to withdraw a guilty plea prior to sentencing. The Superior Court ruled that the guilty plea was knowingly and voluntarily entered with the

* Assigned pursuant to art. IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4(a).

effective assistance of counsel. Our review of the record requires us to conclude that Patterson's plea was based on erroneous advice by his lawyer, was entered in haste without sufficient opportunity for deliberation and was not supported by a sufficient inquiry concerning the elements of the offenses which were the subject of the plea. The cumulative effect of these errors precluded a determination that the plea was knowingly and voluntarily entered. Accordingly, we reverse.

## I

Patterson had been charged by information with four counts of Unlawful Sexual Intercourse First Degree (11 *Del.C.* § 775), two counts of Unlawful Sexual Penetration Third Degree (11 *Del.C.* § 770), one count of Unlawful Sexual Conduct Third Degree (11 *Del.C.* § 767), and one count of Kidnaping Second Degree (11 *Del.C.* § 783). The charges arose from an incident which occurred on August 31, 1993, when Patterson picked up a female hitchhiker on Route 13 outside of Dover. The alleged victim reported to the police that she had been involved in a scuffle with Patterson which led to his forcing her into a remote area where he allegedly sexually assaulted her. Patterson was incarcerated in lieu of bail until the date of his trial, which was eventually scheduled to commence on September 12, 1994.

The facts underlying the entry of Patterson's guilty plea are drawn from the record of the evidentiary hearing conducted by the Superior Court, as well as from the plea colloquy itself.

Four days before his scheduled trial, Patterson's trial counsel, Andre Beauregard, visited Patterson in prison for the purpose of discussing a plea agreement extended by the State. The State's offer was to drop the prosecution of four counts of Unlawful Sexual Intercourse First Degree as well as the kidnaping charge if Patterson pleaded guilty to the lesser included offense of Unlawful Sexual Intercourse Second Degree,[1] and to the remaining two charges of Unlawful Sexual Penetration Third Degree and Unlawful Sexual Contact Third Degree. Since Patterson would be entering a Robinson plea and claimed to have little recollection of the events in question due to his intoxication, Beauregard did not discuss with him the elements of the offense of unlawful sexual intercourse second degree.[2] In fact, Beauregard never reviewed with Patterson the elements of any of the offenses for which he was charged.

Beauregard and Patterson did however discuss the sentence which Patterson might anticipate by reason of his plea. He told Patterson, that although Unlawful Sexual Intercourse Second Degree carried a maximum penalty of 20 years imprisonment, with a 10 year minimum requirement, Patterson could earn reduction of the ten year minimum through "good time" credits. None of the other offenses which were the subject of the plea agreement involved minimum sentences. Beauregard also advised his client that the effect of applying "good time" credits would reduce the 10 year sentence to 7½ years and since Patterson had already served more

---

1. The most serious offense, Unlawful Sexual Intercourse Second Degree, as defined in 11 *Del.C.* § 774 is subject to commission in varying factual alternatives:

 A person is guilty of unlawful sexual intercourse in the second degree when the person intentionally engages in sexual intercourse with another person and any of the following circumstances exist:

 (1) The intercourse occurs without the victim's consent and the person inflicts physical, mental or emotional injury upon the victim:
 a. On the occasion of the crime; or
 b. During the immediate flight from the crime; or
 c. During an attempt to prevent the reporting of the crime; or

 (2) The intercourse occurs without the victim's consent and the defendant was not the victim's voluntary social companion on the occasion of the crime.

 Unlawful sexual intercourse in the second degree is a class B felony. Notwithstanding any provision of this title to the contrary, the minimum sentence for a person convicted of unlawful sexual intercourse in the second degree in violation of this section shall be 10 years at Level V.

2. Under *Robinson v. State*, Del.Supr., 291 A.2d 279 (1972), a defendant may enter a plea of guilty without admitting the actual commission of the offense, if the plea is voluntarily, knowingly, and understandingly made.

than a year awaiting trial, his additional jail time would be approximately six years. Patterson replied that he needed additional time to consider the State's offer and when Beauregard visited him three days later, the day before the scheduled trial, Patterson indicated he wanted to proceed to trial. Beauregard suggested Patterson "sleep on it" and that they would discuss the plea the following day.

On the day scheduled for trial, Patterson advised Beauregard that he wanted his family to decide whether he should accept the plea offer. Both Patterson and Beauregard talked by telephone from the courthouse with Patterson's father. Following that conversation, Patterson advised Beauregard that he would accept the State's offer *i.e.* enter a Robinson plea to one count of Unlawful Sexual Intercourse Second Degree, two counts of Unlawful Sexual Penetration Third Degree, and one count of Unlawful Sexual Contact Third Degree. Beauregard then prepared a written Plea Agreement and a Truth in Sentencing Guilty Plea Form ("TIS Form"). These forms were later presented to Patterson for his signature.

The plea agreement which was signed by Patterson, Beauregard and the prosecutor, recited *inter alia,* the charges to which Patterson would plead guilty and provided that the "State will recommend no more than 20 years at Level 5." Although the plea agreement bears a date of September 8, 1994, apparently it was not signed by Patterson until four days later, the date of his scheduled trial. On that date, September 12, 1994, Patterson and his counsel completed and signed a TIS Form. The TIS form recited the various rights which were waived through the entry of the Robinson plea and also listed the possible sentences for each category of offense. The Unlawful Sexual Intercourse Second Degree charge was listed as carrying a statutory penalty of 2–20 years with a TIS Guideline of a "10 yr. minimum."

Among the printed questions on the TIS form executed by Patterson shortly before the entry of his plea, three are problematic in the present appeal. Patterson answered "YES" to a question: "Do you understand that, if incarcerated, you will not be eligible for parole and the amount of early release credits which you may earn will be limited to a maximum of ninety (90) days per year?" Patterson also answered "YES" to the question which followed: "Is there a mandatory minimum penalty?" To the next question "If yes, what is it" Patterson initially answered "2 yrs."

During the plea colloquy with the Superior Court judge who accepted the plea, Patterson answered essentially with one word responses, "Yes" or "No," to questions concerning the voluntariness and understanding of his plea. After outlining the State's evidence, the prosecutor called the court's attention to an erroneous answer in the TIS form concerning the two year mandatory minimum penalty. The prosecutor commented that it was the State's understanding that unlawful sexual intercourse in the second degree carried a ten year minimum mandatory sentence and that he was unclear as to the discrepancy on the TIS form. The court then inquired if Patterson's counsel agreed with the State's position. Beauregard responded that the ten year minimum sentence was a TIS guideline but not a part of the statutory penalty. The court then noted that 11 *Del.C.* § 774 provided "[n]otwithstanding any provision of this title to the contrary, the minimum sentence for a person convicted of unlawful sexual intercourse second degree in violation of this section shall be 10 years at Level V." The court then returned the form to Beauregard who changed the number "2" to "10," initialed the change and secured Patterson's initials as well. No discussion of the change occurred between Patterson and his counsel and no opportunity was afforded for discussion of the correction's significance.

After the entry of his guilty plea, but before sentencing, Patterson filed a *pro se* motion to withdraw his guilty plea. Eventually, other counsel was appointed for Patterson and an evidentiary hearing held on his motion. At that hearing, Patterson maintained his innocence but also claimed to have been misled by Beauregard concerning the mandatory minimum penalty. Beauregard testified at the evidentiary hearing that he was mistaken as to the initial advice given to

his client concerning the mandatory minimum sentence for Unlawful Sexual Intercourse Second Degree. He became aware of the mistake only when it was pointed out to him during the taking of the plea. Beauregard testified that he advised Patterson, at the podium, "that what the court's instructing us to do is to acknowledge there is a ten year minimum sentence which has to be imposed." Apparently, Beauregard did not indicate to his client at any time that the ten year term was a "mandatory minimum sentence" not simply a "minimum sentence." As hereafter discussed, it is the State's position that a prisoner serving a *mandatory* minimum sentence is not entitled to good time credits.

The Superior Court denied Patterson's motion to withdraw his guilty plea, ruling that the plea had been made knowingly and voluntarily with the effective assistance of counsel. The court ruled that there is "no evidence before the court to support Patterson's present claim that he is innocent" and noted that the State would be prejudiced in permitting a withdrawal of the plea because the offense "is alleged to have occurred over two years ago involving a victim now living outside of Delaware."

### II

 A motion to withdraw a guilty plea is addressed to the sound discretion of the trial court. *Brown v. State,* Del.Supr., 250 A.2d 503, 504 (1969). The denial of such a motion is generally reviewable only for abuse of discretion. *Raison v. State,* Del.Supr., 469 A.2d 424, 425 (1983). The timing of a motion to withdraw a guilty plea is an important factor in the exercise of that discretion, the significance of which is recognized in the rules governing the plea process. Thus, Superior Court Criminal Rule 32(d) provides that if a motion to withdraw a plea of guilty "is made before imposition ... of sentence ... the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only by motion under Rule 61." An effort to withdraw a guilty plea made after sentencing constitutes a collateral attack against the conviction and is

subject to the strictures of Rule 61 including several bars of procedural default. In our view, Rule 32(d), as opposed to Rule 61, contemplates a lower threshold of cause sufficient to permit withdrawal of a guilty plea and one which must guide the discretion of the trial judge.

Superior Court Criminal Rule 11(c)(1) requires the trial court to address the defendant personally in order to determine the defendant's understanding of the "nature of the charge to which the plea is offered." Patterson claims that although the trial judge did ask him if he understood the nature of the charge of Unlawful Sexual Intercourse Second Degree this was insufficient to determine his understanding of the offense. In particular, Patterson contends that: his counsel failed to explain the elements of Unlawful Sexual Intercourse Second Degree and, since this was a lesser included charge not contained in the information, Patterson had no opportunity to read the elements of that offense. He also claims that the trial judge failed to ask him, as was done in the case of the other charges to which Patterson was pleading, whether the defendant had read or had read to him the elements of the more serious offense.

The State correctly notes that Superior Court Criminal Rule 11(h) obviates the need for a rigid formalistic approach to compliance. If this omission were the only defect in the plea colloquy we would not be inclined to give credit to Patterson's claim of a lack of understanding as to the nature and consequence of his plea. However, the Rule 11 deficiency coupled with the ill-formed understanding of the sentencing consequences requires an examination of the cumulative effect of the claimed errors.

### III

 Patterson's principal contention is that he was misinformed with respect to the sentence he was subjecting himself to and was not afforded sufficient opportunity to consult with counsel once the sentencing discrepancy was made known to him. Specifically, Patterson contends that he accepted the State's plea offer on the strength of his attorney's assurance that the minimum sen-

tence of ten years for the charge of Unlawful Sexual Intercourse Second Degree would be reduced by "good time" credits and time served so that, effectively, Patterson faced only six years additional imprisonment. There is no dispute that, as the TIS plea form indicates, Patterson faced a total of 31½ years of imprisonment by reason of his plea however, despite the State's recommendation of "no more than 20 years at Level V," the focus of Patterson's discussion with his counsel was limited to the minimum sentence he faced.

The State concedes that Beauregard's initial advice to his client concerning the minimum sentence was error since Beauregard did not appreciate the "mandatory" nature of the ten year minimum. Indeed, Beauregard was under the impression, not dispelled until entry of the plea, that the "mandatory" term was two years, not ten. Even after this misimpression was corrected at the direction of the trial judge, the TIS plea form was inconsistent on its face. As previously noted, one of the printed questions which Patterson answered in the affirmative acknowledged that he would receive "early release credits ... to a maximum of ninety (90) days per year." The State concedes that, notwithstanding the language of the TIS plea form, a mandatory minimum sentence of ten years for Unlawful Sexual Intercourse Second Degree under 11 *Del.C.* § 774 could not be reduced below 10 years of imprisonment at Level V [3] by application of early release credit.

The erroneous advice given to Patterson by his counsel was compounded by a lack of an opportunity to confer with his counsel once the State brought the discrepancy to the attention of the trial judge. In view of the significance of the minimum sentence in the previous plea discussions with his counsel, and the erroneous advice he received, Patterson should have been afforded an opportunity to discuss with counsel the unexpected change in the sentencing construct which flowed from his plea. While we recognize the unique perspective of the trial judge

and his appreciation for the dynamics of the plea process, the better course would be for the trial judge to afford the defendant the opportunity to confer privately with his counsel before being required to initial his approval of a significant change in the possible sentence faced. Under the circumstances, the record depicts a defendant deprived of the opportunity to make an effective and intelligent acknowledgment of the consequences of his plea. To refuse to permit withdrawal of the plea in the face of a prompt disavowal of its effect constitutes an abuse of judicial discretion.

■ In rejecting Patterson's motion to withdraw his plea, the Superior Court relied upon a decision of that court in *State v. Friend,* Del.Super., Cr.A. No. IN93–08–0361, 1994 WL 234120 (May 12, 1994) *aff'd Friend v. State,* Del.Supr., No. 75, 1996, 683 A.2d 59, 1996 WL 526005 Walsh, J. (Aug. 16, 1996) (ORDER). In *Friend,* the trial court adopted a framework for determining whether a defendant should be permitted to withdraw a guilty plea prior to sentencing. The *Friend* court, after a review of decisions in other jurisdictions, adopted five factors for consideration: (a) was there a procedural defect in taking the plea; (b) did the defendant knowingly and voluntarily consent to the plea agreement; (c) does the defendant have a basis to assert legal innocence; (d) did the defendant have adequate legal counsel; and (e) will the State be prejudiced or the court unduly inconvenienced if the motion is granted. In *Friend,* the Superior Court "considered" all five factors in denying the motion. In the present case, the Superior Court denied the motion "based upon the foregoing factors."

Patterson contends that while the *Friend* factors are appropriate for consideration they should not be "balanced" as appears to have been the approach of the trial court in this case. We agree that the *Friend* factors, while providing a useful framework for determining whether, in the language of Rule 32(d), "any fair and just reason" has been shown by the defendant seeking to withdraw

---

**3.** We are not required in this appeal to pass upon the State's interpretation of § 774 and we expressly refrain from doing so. We recite the State's position merely to emphasize the facial inconsistency on the TIS plea form executed by Patterson.

a guilty plea, do not lend themselves to a balancing analysis. Certain of the factors, standing alone, will themselves justify relief. Thus, if there is a serious procedural defect in the plea process or if it clearly appears that the defendant did not knowingly or voluntarily consent to the plea agreement, a sufficient basis exists for withdrawal of the plea notwithstanding whether there is a basis for a claim of factual innocence or whether there is prejudice to the State.

In this case it is not clear whether the Superior Court conducted a balancing analysis, although an inference to that effect may be fairly drawn from its decision. In any event, the court while concluding that Patterson had the benefit of adequate counsel, never addressed the effect of Beauregard's erroneous advice or the lack of opportunity by Patterson to consider the last minute change in the TIS form. Moreover, although the trial court found no evidence to support Patterson's claim of legal innocence, Patterson's counsel at the evidentiary hearing specifically eschewed exploration of his client's innocence after the State objected on grounds of relevancy. Finally, we note that the trial court's finding of prejudice to the State was based, in part, on the fact that the victim was out-of-state, not that she was unavailable for a future trial.

In *Brown,* this Court emphasized the need through "direct interrogation of the defendant," to establish a record of the factual basis for a plea of guilty, including an understanding of the consequences of his plea and that "he has discussed with his attorney *fully* the entry of his plea of guilty" (emphasis added). 250 A.2d at 505. In this case, the record establishes that the defendant was not advised concerning the elements of the principal offense to which he was pleading guilty nor did he have a clear understanding of the sentencing consequences of his plea. The cumulative impact of these deficiencies constitutes reversible error. *Hughes v. State,* Del.Supr., 437 A.2d 559, 573 (1981). Under the circumstances, the refusal of the trial judge to permit the withdrawal of the guilty plea constituted an abuse of discretion.

The judgment of the Superior Court is REVERSED and this matter is REMANDED for further proceedings consistent with this decision.