# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
                                      )
      v.                 )     ID Nos. 1910011637, 1910002022
                                        )              2009010583, VOP16110110891
DEONTA CARNEY, )
                                        )
    Defendant.       )

Date Submitted: August 1, 2022
Date Decided: November 18, 2022

*Upon Defendant Deonta Carney's Motion to Withdraw Guilty Pleas*
**DENIED.**

# ORDER

Anthony J. Hill, Esquire and John S. Taylor, Esquire, Deputy Attorneys General, DEPARTMENT OF JUSTICE, 820 North French Street, Wilmington, Delaware, 19801, Attorneys for the State.

Megan J. Davies, Esquire, LAW OFFICES OF MEGAN J. DAVIES, 716 N. Tatnall Street, Wilmington, Delaware 19801, Attorney for Defendant Deonta Carney.

**WHARTON, J.**

This 18th day of November, 2022, upon consideration of Defendant Deonta Carney's ("Carney") Motion to Withdraw Guilty Plea and the State's responses, it appears to the Court that:

1.     On July 12, 2021, Carney rejected a plea offer in case number 1910011637.[1] The plea would have resolved four cases encompassing 27 charges.[2] The plea offer called for Carney to plead guilty to five charges - two counts of Robbery Second Degree (as lesser included offenses of Robbery First Degree), two counts of Possession of a Firearm by a Person Prohibited ("PFBPP"), and Illegal Gang Participation and to admit to a violation of probation.[3] In exchange, the State agreed to entered a *nollo prosequi* on all remaining charges, recommend the minimum mandatory sentence at Level V (10 years), and agreed that the "VOP be reimposed with no additional unsuspended level five time."[4]

2.     Following the plea rejection, case number 1910011637 was set for trial on July 20, 2021.[5] However, before opening statements and upon learning the State's out-of-state "critical civilian witness" was present,[6] Carney informed the

---

[1] D.I. 12. (Unless indicated otherwise, D.I. numbers are from ID No. 1910011637A.)
[2] *Id.*; DUC# 2009010583 (eight charges); DUC# 1910011637A (six charges); DUC# 1910002022 (five charges); DUC# 1611010891 (eight charges).
[3] *Id.*
[4] *Id.*
[5] D.I. 15.
[6] Tr., at 2 (References to the transcript are to the Plea Colloquy hearing on July 20, 2021), D.I. 22.

State through counsel that he wished to plead guilty.[7] The State extended the same offer Carney had rejected before, but with a notable difference – the State removed the cap on its sentencing recommendation.[8] While less favorable to Carney than the earlier rejected plea offer, this plea offer benefitted Carney by limiting his exposure to minimum mandatory sentences and lowering his overall statutory maximum punishment.[9] Carney accepted the plea.

3. After executing a Plea Agreement and Truth-in-Sentencing Guilty Plea Form, the Court conducted an extensive colloquy with Carney.[10] He was informed again of the minimum mandatory and maximum possible penalties,[11] the rights he was giving up by pleading guilty,[12] and asked whether he was coerced into pleading or dissatisfied with his representation.[13] Carney responded that he was neither coerced nor dissatisfied.[14] The Court found "the plea to be knowingly, voluntarily

---

[7] *Id.*, at 3.

[8] MR. TAYLOR: "It is not the plea that was previously on offer; it was gotten worse […] It is the same plea, but there is no State's cap, so it is open sentencing." *Id.*, at 3:7–9; 3:13–15.

[9] MR. MALIK: "By virtue of the plea that's been entered in this case, Mr. Carney is avoiding an additional eight years of minimum mandatory time for each of the robbery charges, and it's effectively reducing the maximum on each by 35 years." *Id.,* at 8:5–11.

[10] *Id.*

[11] *Id.*, at 15–18. (Counsel had discussed potential sentences with Carney prior to the colloquy. *Id.,* at 8–9.).

[12] *Id.*, at 13–14.

[13] *Id.*, at 13; 20.

[14] *Id.*, at 13:8–19; 20:16–19.

and intelligently offered and [accepted all pleas]."[15]  A presentence investigation was ordered, and sentencing was scheduled for September 24, 2021.[16]

4.      Despite the extensive colloquy, Carney developed second thoughts.  He filed a *pro se* Motion to Withdraw Guilty Plea on August 3, 2021 which was referred to his counsel.[17]  On October 21, 2021, John S. Malik, Esquire filed a Motion to Withdraw Guilty Plea on Carney's behalf, including a copy of Carney's *pro se* motion as an attachment.[18]  Counsel represented, and the *pro se* motion argued, that Carney was seeking to withdraw his guilty pleas in part because they were the product of ineffective assistance of counsel.

5.      At a hearing on March 15, 2022, the Court permitted counsel to withdraw and confirmed with Carney that he desired that counsel be appointed for him to assist his in attempting to withdraw his guilty pleas.[19]  The Court ordered that new counsel be appointed for Carney and Megan J. Davies, Esquire subsequently was appointed to represent Carney.  The Court then ordered that the State provide Ms. Davies with

---

[15] *Id*, at 27:4–6.
[16] D.I. 15; 16.
[17] Def.'s *pro se* Mot. to Withdraw Guilty Plea, D.I. 18 (attached as Ex. C to the Motion to Withdraw Guilty Plea filed by Mr. Malik, D.I. 20).
[18] Def.'s Mot. to Withdraw Guilty Plea, Ex C, D.I. 20.
[19] D.I. 24.

certain discovery by June 24, 2022 and that she file any supplemental material or an amended motion to withdraw guilty plea by July 15, 2022.[20]

6. On July 14, 2022, Carney's current counsel, Ms. Davies, filed his third and final submission in the form of a supplemental brief.[21] The State has filed two responses in opposition – the first in response to the original motion filed by Mr. Malik and the second in response to Ms. Davies' supplemental brief.[22]

7. Carney argues that he should be allowed to withdraw his plea because it was the product of ineffective assistance counsel,[23] it was not knowingly, voluntarily, and intelligently entered, and it was entered despite him being innocent of one of the PFBPP charges.[24] He also contends that the State would not be prejudiced if his motion is granted.[25]

---

[20] D.I. 25.

[21] Supp. Br. in Support of Def.'s Mot. to Withdraw Guilty Plea, D.I. 26.

[22] State's Resp. to Mot. to Withdraw Guilty Plea, D.I. 23; State's Resp. to Supp. Mot. to Withdraw Guilty Plea, D. I. 27.

[23] Almost as an afterthought, and without any documentation, Carney argues that as a young adult his ongoing brain development made him especially susceptible to his lawyers' comments. He also claims that he "had not fully processed what was occurring nor the ramifications of his acceptance." The Court does not find that the mere fact of Carney youth is a sufficient reason to allow him to withdraw his guilty pleas. It finds that Carney remains bound by his in-court representations, including his satisfactory representation. Supp. Br. in Supp. of Def.'s Mot. to Withdraw Guilty Plea, at ⁋ 23, D.I. 26; *see Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).

[24] *E.g.*, Def.'s Mot. to Withdraw Guilty Plea, at ⁋ 9, D.I. 20

[25] *Id.,* at ⁋ 11.

4

8. The State counters that Carney has no grounds for withdrawing his guilty plea – he is not actually innocent of the PFBPP charge; his counsel was not ineffective; and the State would be unduly prejudice if the Motion were granted.[26] It argues that granting the Motion would give Carney another opportunity to make sure the witnesses appear, only to change his mind and plead guilty at the 11th hour if they do.[27]

9. A guilty plea may be withdrawn before sentencing,[28] but a defendant has no absolute right to do so.[29] The defendant bears the "substantial"[30] burden of showing "any fair and just reason" for withdrawal.[31] The decision to grant or deny withdrawal is within the Court's discretion.[32]

10. To determine whether there is a "fair and just" reason for withdrawal of a guilty plea, the Court must address the following:

    a) Was there a procedural defect in taking the plea;

[26] State's Resp. to Def.'s Mot. to Withdraw Guilty Plea, D.I. 23; State's Resp. to Def.'s Supp. Mot. to withdraw Guilty Plea, D.I. 27.
[27] State's Resp. to Def.'s Supp. Mot. to Withdraw Guilty Plea, D.I. 27. Of course, the State is not obliged to offer a plea at any future trial should the Court grant the Motion.
[28] Super. Ct. Crim. R. 32(d).
[29] *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005) (internal citations omitted).
[30] *United States v. Jones*, 336 F.3d 245, 252 (3d. Cir. 2003)
[31] Super. Ct. Crim. R. 32(d).
[32] *Id.* ("the court *may* permit withdrawal of the plea") (emphasis added); *State v. Phillips*, 2007 WL 3105749 at *1 (Del. Super. Ct. 2007) (quoting *Brown v. State*, 250 A.2d 503, 504 (Del. 1969)).

b) Did the defendant knowingly and voluntarily consent to the plea agreement;
c) Does the defendant presently have a basis to assert legal innocence;
d) Did the defendant have adequate legal counsel throughout the proceedings; and
e) Does granting the motion prejudice the State or unduly inconvenience the Court.[33]

The Court does not balance these factors.[34] Instead, "[c]ertain of the factors, standing alone, will themselves justify relief."[35]

11. **There were no procedural defects in the plea colloquy.** Carney admits that there were no defects in the colloquy.[36] The Court agrees and finds that the "numerous protections" afforded to Carney were honored.

12. **Carney's plea was entered into knowingly, intelligently, and voluntarily.** Barring clear and convincing evidence to the contrary, defendants are bound by the representations they make during their plea colloquy.[37] These statements are "presumed to be truthful"[38] and pose a "formidable barrier to a collateral attack on a guilty plea."[39] At no point during his colloquy did Carney so

---

[33] *State v. Friend*, 1994 WL 234120, at * 2 (Del. Super. Ct. 1994) (internal citations omitted); *see Scarborough v. State*, 938 A.2d 644, 649 (Del. 2007); *McNeill v. State*, 2002 WL 31477132, at * 1–2 (Del. 2002).
[34] *Patterson v. State*, 684 A.2d 1234, 1239 (Del. 1996).
[35] *Id*.
[36] Def.'s Mot. to Withdraw Guilty Plea, at ⁋ 9, D.I. 20. "Defendant Carney does not contend that there was a [procedural] defect with his guilty plea.".
[37] *Somerville*, 703 A.2d at 632.
[38] *Somerville*, 703 A.2d at 632 (citing *Davis v. State,* 1992 WL 401566 (Del. 1992)); *Bramlett v. A.L. Lockhart*, 876 F.2d 644, 648 (8th Cir. 1989)).
[39] *Blackledge v. Allison,* 431 U.S. 63, 64 (1977).

much as insinuate his plea was not knowingly, intelligently, and voluntarily entered.[40] He informed the court that he was satisfied with his attorney's representation.[41] He denied being forced into pleading guilty.[42] and he stated that he understood all the terms of the of his plea agreement.[43] In addition to his own words, his trial counsel's representations to the Court support the conclusion that Carney entered into the plea with a full understanding of it. Specifically, Mr. Malik stated that he believed that "based upon [his] discussions with him, that Mr. Carney is prepared at this time to enter a knowing, voluntary and intelligent plea before the Court."[44] Based on the above record, and as it did when the plea was entered, the Court finds that Carney entered his guilty plea knowingly, intelligently, and voluntarily.

13. **Carney does not have a basis to establish factual or legal innocence.** When seeking to withdraw their guilty pleas, criminal defendants remain presumptively bound by their representations to the Court.[45] So, after pleading guilty, a defendant must present "some other support" to overcome their plea and to

---

[40] *See,* Tr., D.I. 22.
[41] *Id*., at 20:16–19.
[42] *Id*., at 13:16–19.
[43] *Id.*, at 11–13.
[44] *Id*., at 10:5–9.
[45] *Somerville*, 703 A.2d at 632.

assert innocence.[46]  There is no mention of innocence in Carney's *pro se* filing.[47]

The first mention of this consideration is in trial counsel's follow-up motion where

counsel simply states that:

> [s]ubsequent to the filing of his pro se motion to withdraw his guilty plea, Mr. Carney has indicated to counsel his belief that alleged inconsistencies in the police reports provide a basis to claim factual innocence given alleged misidentification of the perpetrators of the robbery by the alleged victim.[48]

In his third submission, Carney explains that he plead guilty to PFBPP in case

1910011637 despite being innocent.[49]  He argues that he neither actually possessed

nor jointly possessed the gun.[50]  Carney bolsters this argument by pointing to the

uncertainty in Det. Hayman's Investigative Narrative as to who possessed the gun

and when.[51]  The date of the alleged incident described in Det. Hayman's report is

August 22, 2019.[52]  For Carney, these points justify withdrawal.

14.    The State first correctly points out that Carney misidentifies the case

number for which he claims innocence.  Carney references Det. Hayman's report to

---

[46] *State v. McNeill*, 2001 WL 392465, at * 3 (Del. Super. Ct. 2001) (citing *Russell v. State*, 734 A.2d 160 (table) (Del. 1999).

[47] Def.'s Mot. to Withdraw Guilty Plea, Ex. C., D.I. 20.

[48] *Id.,* at ¶10.

[49] Supp. Br. in Support of Def.'s Mot to Withdraw Guilty Plea, at ¶11, D.I. 26.

[50] *Id.,* at ¶¶ 11–14.  Carney argues against joint possession by pointing to the fact that despite his call for his co-conspirator to fire the weapon no shots were fired. *Id.* at n. 1.

[51] *Id*., at Ex. A.

[52] *Id*.

support his claim.[53] Det. Hayman's report relates to case number 1910002022, not case number 1910011637 as Carney states.[54] More substantively, the State argues that Det. Hayman's report supports a conclusion that Carney, at a minimum, is guilty of constructive possession of the firearm.[55]

15. The proper starting point for addressing Carney's contention that he is innocent of one of the PFBPP charges to which he pled guilty is the plea colloquy. Before accepting his pleas, as to each charge, the Court read that particular count to Carney, asked him if he understood the charge, asked him if he committed that offense, and asked him what his plea was.[56] Specifically, as to the charge for which Carney now claims innocence, the exchange between the Court and Carney was as follows:

> THE COURT:  The next charge is possession of a firearm by a person prohibited, which is Count IV of that same indictment that includes the last robbery charge, and it reads that you, on or before [sic] the 22nd day of August in 2019, in New Castle County, Delaware, did knowingly possess or control a firearm, as defined under Delaware law, after having been convicted of criminally negligent homicide, a felony, in case number 1611010891 in the Superior Court of the State of Delaware, in and for New Castle County, on or about February 27th, 2019.
>
> Do you understand that charge?

---

[53] *Id.,* at ⁋⁋ 11, 12.
[54] State's Resp. to Def's Supp. Mot. to Withdraw Guilty Plea, D.I. 27.
[55] *Id.*
[56] Tr., at 21-27, D.I. 22.

9

> THE DEFENDANT: Yes.
>
> THE COURT: Did you commit that offense?
>
> THE DEFENDANT: Yes.
>
> THE COURT: What's your plea to that charge?
>
> THE DEFENDANT: Guilty.[57]

The record establishes that Carney understood he was pleading guilty to, and was in fact guilty of, the PFBPP count associated with the robbery charge that occurred on August 22, 2019.[58] That incident is the one for which Det. Hayman authored the police report upon which Carney now relies to establish his innocence.[59] Obviously, the Court views with skepticism Carney's newly discovered understanding that he was innocent of that charge all along.

16. The Court finds that there was sufficient factual basis to convict Carney of PFBPP in the August, 2019 incident as described in Det. Hayman's report. The relevant portion of the report reads, "The victim stated that the unknown black male accomplice was in possession of the silver handgun. During the incident S1 (Deonta Carney BMN and DOB: 10/28/2000) was stating to the younger black male suspect, 'Just shoot him.' However, during the incident, no shots were fired."[60] In order to

---

[57] *Id.,* at 25-26.
[58] *Id.,* at 24-25.
[59] State's Resp. to Def.'s Supp. Mot. to Withdraw Guilty Plea, at Ex. A, D.I. 27.
[60] *Id.*

10

establish constructive possession, the State must show that Carney: (1) knew the location of the firearm; (2) had the ability and the intention, at the time, to exercise dominion and control over it; and (3) intended to guide its destiny.[61] Circumstantial evidence may prove constructive possession.[62] The Court finds all three elements of constructive possession are established in the quoted portion of Det. Hayman's report. Carney knew the location of the firearm and appeared to have the ability and intention to exercise control over it and to guide its destiny when he commanded his accomplice to "Just shoot him." The fact that the accomplice disobeyed Carney's command does not alter this conclusion, particularly in light of Carney's admission that he committed the offense when the Court questioned him.

17. **Carney had effective legal counsel throughout his proceedings.** To prevail on his ineffective assistance of counsel claim, Carney must satisfy the two-factor standard originally outlined in *Strickland v. Washington*.[63] When it comes to withdrawal of a guilty plea, a defendant must show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) that counsel's actions were so prejudicial "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on

---

[61] *Lecates v. State*, 987 A.2d 413, 426 (Del. 2009).
[62] *Id.,* at 420-421.
[63] 466 U.S. 668 (1984); *see Albury v. State*, 551 A.2d 53, 58 (Del. 1988).

11

going to trial.'"[64]  When evaluating counsel's performance, "[a] court must indulge in a *strong presumption* that counsel's conduct falls within the wide range of reasonable professional assistance."[65]

18.    The crux of Carney's argument is that he was strong-armed into pleading guilty because he lost faith in his counsel after receiving the "misleading advice" that he likely would be convicted.[66]  The State counters that "Defendant is attempting to impose his own subjective and emotional view of the case and asks the Court to disregard what two seasoned and respected attorneys advised him, and to disregard his own words spoken to the Court when being given the plea colloquy on July 20, 2021."[67]  The Court examines both attorneys' conduct individually.

19.    Kevin P. Tray, Esquire represented Carney before Mr. Malik.  It is not clear at all to the Court what Mr. Tray had to do with Carney's eventual decision to plead guilty which occurred 10 months after Mr. Tray's representation ended.[68]  Nevertheless, the Court looks at Carney's arguments about Mr. Tray.  Those arguments revolve around a letter Carney received from Mr. Tray while Mr. Tray

---

[64] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).
[65] *Strickland*, 466 U.S. at 669 (emphasis added); *see also Albury*, 551 A.2d at 59.
[66] Def.'s Mot. to Withdraw Guilty Plea, D.I. 20; Supp. Br. in Support of Def.'s Mot. to Withdraw Guilty Plea, at ¶¶ 21, D.I. 26.
[67] State's Resp. to Def's Supp. Mot. to Withdraw guilty Plea, D.I. 27.
[68] Mr. Malik entered his appearance on September 15, 2020, D.I. 7.  Carney entered his pleas on July 20, 2021., D.I. 15.

12

was his attorney.[69] He argues that Mr. Tray's letter is indicative of coercion and a lack of willingness to advocate on his behalf because Mr. Tray states that "a trial would be a slow-motion guilty plea."[70]

20. To the extent that comment matters in the context of Carney's decision to plead guilty, the Court disagrees with Carney's conclusion. The quotation is the last sentence in a three-paragraph letter written more than a year before Carney pled guilty.[71] Earlier sections of the letter provide context for the statement. The statement comes after Mr. Tray tries to preserve confidentiality, explains his preferred means of communication, implores Carney to give him names of helpful witnesses, and notes "the strength of the evidence" against Carney.[72] The comment that Carney claims deprived him of effective assistance of counsel from Mr. Tray is, "I strongly suggest that you bring [helpful witnesses] to my attention. Otherwise, you can see from the strength of the evidence, a trial would be a slow-motion guilty plea."[73] The Court fails to see how this letter constitutes anything but effective assistance. Criminal defense attorneys, indeed, all lawyers, are supposed to give their clients honest appraisals of the relative strength of the evidence in their cases

---

[69] Def.' Mot. to Withdraw Guilty Plea, at Ex. A to Ex. C, D.I. 20.
[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] *Id.*

so that clients can make informed decisions. Mr. Tray's realistic assessment, albeit somewhat colorful, is just such an appraisal.

21. Carney also claims that Mr. Malik "pressured" him into pleading guilty by pointing out that "he would be convicted if the State's witness took the stand."[74] According to Carney, this comment indicates that Mr. Malik "had pre-determined the outcome of the case and would not act as the zealous advocate to which Mr. Carney was entitled."[75] This argument underscores Carney's fundamental misunderstanding of the role of an attorney. A lawyer is not a cheerleader, and the fact that a lawyer gives a client a realistic assessment of the evidence does not preclude the lawyer from zealously advocating for the client at trial. Further, the plea colloquy belies any such contention that Carney was coerced into pleading guilty.[76] In fact, Carney expressly acknowledged that he had "freely and voluntarily decided to plead guilty to the charges in the plea agreement."[77] He disavowed that "Mr. Malik, the State, or anybody threatened or forced him to plead guilty."[78] Crosby further told the Court that he was satisfied with Mr. Malik's representation of him and that Mr. Malik had fully advised him of his rights.[79] Mr. Malik informed

---

[74] Supp. Br. in Support of Def.'s Mot. to Withdraw Guilty Plea, at ¶ 18, D.I. 26.
[75] *Id.*
[76] Tr., at 7-27, D.I 22.
[77] *Id.*, at 13:8-11.
[78] *Id.*, at 13:16-19.
[79] *Id.,* at 20:16-20.

14

the Court that he was prepared to proceed with trial, but that after seeing the out-of-state victim/witness, Carney decided to plead guilty.[80] Even before trial, Mr. Malik's filings demonstrate that he was actively engaged in the advocacy process by filing a discovery request,[81] moving for bail to be reduced,[82] and submitting proposed *voir dire* questions.[83]

22. Neither attorney's conduct constitutes ineffectiveness under *Strickland.* Carney remains bound by his avowals that he was satisfied with his counsel's performance and that neither of his attorneys forced or coerced him into pleading guilty.[84]

23. **Granting withdrawal would prejudice the State and unduly inconvenience the Court.** The State "need not show […] prejudice when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea."[85] Here, as detailed above, Carney failed to establish a sufficient basis for withdrawing his plea. Denial, therefore, is appropriate on that basis alone.[86] The Court, however, briefly addresses the parties' arguments regarding prejudice and

---

[80]*Id.*, at 2:12–14; 3-4.
[81] D.I. 11.
[82] D.I. 8.
[83] D.I. 13.
[84] Tr., *passim,* D.I. 22; *see Somerville*, 703 A.2d at 632.
[85] *United States v. Jones*, 336 F.3d 245, 255 (3d Cir. 2003) (citing *United States v. Harris*, 44 F.3d 1206, 1210 (3d. Cir. 1995)).
[86] *United States v. Martinez*, 785 F.2d 111, 116 (3d. Cir. 1986).

inconvenience. Carney argues that the State would not be prejudiced because "trial [would be] incredibly simple."[87] He claims that balancing this "simple" preparation against the "extensive exposure" Carney faces "should sway the Court in [his] favor[.]"[88] The State counters that it spent weeks preparing for trial, including securing evidence and ensuring that all witnesses (one out-of-state victim is from Kansas) would be present.[89] Allowing Carney to withdraw his guilty plea would result in undue prejudice and unfairly give Carney another opportunity to "change his mind at the 11th hour and accept a guilty plea."[90]

24. Carney's decision to plead guilty was calculated - he intended to proceed with trial if the victim did not appear, anticipating the charges would be dropped, and would accept a plea offer if the victim did appear.[91] Upon being informed the victim was present, Carney changed his mind and chose to plead guilty. But, "[a] shift in defense tactics, *a change of mind*, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of

---

[87] Supp. Br. in Support of Def.'s Mot. to Withdraw Guilty Plea, at ¶ 24, D.I. 26.
[88] *Id.*
[89] State's Resp. to Def.'s Mot. to Withdraw Guilty Plea, at 7, D.I. 23; State's Resp. to Def.'s Supp. Mot. to Withdraw Guilty Plea, D.I. 27.
[90] State's Resp. to Def.'s Supp. Mot. to Withdraw Guilty Plea, D.I. 27. *See, e.g.*, *State v. Drake*, 1995 WL 654131 at * 6 (Del. Super. Ct. 1995) (finding that the State would be prejudiced from a plea withdrawal because it was prepared for trial when the plea was entered).
[91] Tr., at 3:1–3; 19–22, D.I. 22.

trying a defendant who has already acknowledged his guilt by pleading guilty."[92]

Allowing Carney to withdraw his plea now only would reward his gamesmanship.

**THEREFORE,** Defendant Deonte Carney's Motion to Withdraw Guilty Plea

is **DENIED**. The presentence investigation previously ordered shall be completed

and a sentencing date shall be set.

**IT IS SO ORDERED**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

---

[92] *United States v. Iavarone*, 186 F. App'x 274, 276 (3d Cir. 2006) (citing *United States v. Brown*, 250F.3d 811, 815 (3d Cir. 2001).